**In re Leroy ZIEGLER, Debtor.**

**Bankruptcy No. 1–79–02190.**

United States Bankruptcy Court,
S. D. Ohio, W. D.

April 16, 1980.

Paul Vesper, Covington, Ky., for creditor.

Robert A. Goering, Cincinnati, Ohio, for debtor.

Arthur C. Elliott, Cincinnati, Ohio, Chapter 13 Trustee.

## DECISION ON OBJECTION TO CONFIRMATION OF CREDITOR THORP CREDIT, INC. OF OHIO

BURTON PERLMAN, Bankruptcy Judge.

In this Chapter 13 case, a meeting of creditors was held pursuant to 11 U.S.C. § 341(a). At that meeting, creditor Thorp Credit, Inc. of Ohio (hereafter "Thorp") registered a verbal objection to confirmation of the plan which was presented. Subsequently, debtor's plan was amended, but Thorp maintained its objection to confirmation. The court heard oral argument on the objection.

The schedule filed by debtor shows that the collateral for the loan made by Thorp to debtor consists of a second mortgage on the residence of debtor and a 1976 Bobcat automobile. Thorp filed a proof of claim which states that the principal amount now owing by debtor is $8,875.58. The proof of claim also states that the fair market value of the

property on which Thorp has a lien is $8,141.00. The proof of claim contains a written rejection of the plan proposed. Debtor has filed no objection to the proof of claim, and it is therefore accepted that the value of Thorp's collateral is $8,141.00.

In the premises, if the plan proposed is to be confirmed, it must be done under 11 U.S.C. § 1325(a)(5)(B) which provides a mechanism for confirmation where the other courses possible under 11 U.S.C. § 1325(a)(5) are not utilized. Such other possibilities are that the holder of the allowed secured claim accept the plan, § 1325(a)(5)(A), or the debtor surrender the collateral to the creditor, § 1325(a)(5)(C). The course left open under 11 U.S.C. § 1325(a)(5)(B) is stated in the statute in the following words:

"(5) with respect to each allowed secured claim provided for by the plan—

&ast; &ast; &ast; &ast; &ast; &ast;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;"

■ Thorp points out that the plan now before us fails to provide in express terms as required by the statute, that the holder of such claim retain the lien securing the claim. Upon examination of the plan, we are compelled to agree with the creditor. Debtor will have to amend the plan to accommodate this requirement of the statute before it can be confirmed.

The real controversy between the parties, however, relates to § 1325(a)(5)(B)(ii). It is the position of the debtor recalling that there is no dispute that the value of the collateral is $8,141.00 that all that the plan must provide is that this amount be paid out over the life of the plan. Creditor, on the other hand, also starting from the valuation of $8,141.00, says that since payments over a period of time are contemplated by the plan, a total in excess of $8,141.00 are

required to give it something having a present value of $8,141.00.

As its first thrust on oral argument, debtor asserted the position that the objection to confirmation was not well taken, for all that is necessary, says debtor, to meet § 1325(a)(5)(B)(ii) is for there to be a determination of whether the value of the collateral exceeds the amount of the claim or is less than the amount of the claim, and here it is undisputed that the claim exceeds the value of the security. The basis for debtor's argument in this respect, as we understand it, is its interpretation of 11 U.S.C. § 506 of which subparagraphs (a) and (b) are here relevant and are now quoted:

"§ 506. Determination of secured status

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose."

We note that under the facts agreed to by the parties, applying § 506(a), that Thorp's "allowed secured claim" amounts to $8,141.00 and that the balance of its claim, the difference between $8,875.58 and $8,141.00, or $734.58, is unsecured.

■ It is to § 506(b) that debtor looks to support its thesis which is stated above. That subparagraph provides that a creditor is entitled to interest and reasonable fees etc. where the value of the collateral exceeds the amount of the allowed secured claim. Debtor suggests that it should be inferred from this subparagraph that where the value of the collateral is equal to or less than the allowed secured claim, then interest and fees etc. may not be allowed. We find this contention of debtor without merit. The legislative history of § 506(b) states that:

"Subsection (b) codifies current law by entitling a creditor with an over secured claim to any reasonable fees, costs, or charges provided under the agreement under which the claim arose. These fees, costs, and charges are secured claims to the extent that the value of the collateral exceeds the amount of the underlying claim."

See House Report No. 95–595, 95th Cong. 1st Sess. (1977) 356, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6312. It is clear to us that the intent of this subsection is to give statutory authority for regarding interest and appropriate fees as part of the allowed secured claim in the special (and rare) situation where the value of collateral exceeds that of the claim. We perceive no intent in this subsection on the part of Congress to make a general expression as to when a creditor is entitled to receive interest, with a dividing line being whether value of collateral exceeds or is less than the claim. Having rejected debtor's argument in this respect, it will be apparent that our view is that before a Chapter 13 plan can be confirmed, there must be a determination, pursuant to § 1325(a)(5)(B)(ii), of "the value, as of the effective date of the plan, of property to be distributed under the plan", and that such value be "not less than the allowed amount of such claim."

First, let us settle the meaning of "allowed amount" of a claim. This term appears to be of special significance in the situation where the value of collateral is less than the amount of the claim. When the court values the collateral, the claim is secured to the extent of that valuation, and that valuation is the allowed secured claim. So, in the case of the under-secured creditor which we have just described, all that § 1325(a)(5)(B)(ii) requires, and all that is required for confirmation over the objection of a creditor, is that the value of what the creditor gets is not less than the allowed claim. This returns us to the difficult issue presented by the parties.

■ Debtor argued, somewhat ingeniously, at the hearing that once they are paid off, there is no difference between an unsecured and a secured creditor, and from this it was reasoned that there is no ground for treating a secured creditor differently from an unsecured creditor. The conclusion from this line of thought was that since unsecured creditors do not receive interest, neither should a secured creditor. The short answer to this argument is that the statute makes a clear and unmistakeable distinction between unsecured and secured claims. See § 1325(a)(4), and compare it to § 1325(a)(5). In the end what the question comes down to is whether the secured creditor, in this case having an allowed secured claim in the amount of $8,141.00, is entitled to payments over a period of time under the plan which equal $8,141.00, or are something in excess of $8,141.00. We hold that the latter is the correct solution. When the statute says that the value of property to be distributed is to be as of the effective date of the plan, this suggests to us that the legislature had in mind that the creditor was entitled on that date to his collateral, and this section of the Code provided an equitable method for dealing with him since we were not going to let him have his collateral. So in the present instance, on the effective date of the plan, Thorp is entitled to $8,141.00. Since we are not giving it to them, but rather are giving them payments over a period of time, the total to be paid them must exceed $8,141.00, for the reason that the payment of $8,141.00 over a period of time is not worth as much as the payment of $8,141.00 today. See *In re Lum*, 1 B.R. 186, 5 B.C.D. 1039, C.C.H. Bankruptcy Law Reporter ¶ 67,254 (Bkrtcy. E.D.Tenn., 1979).

■ Having held that this is the correct principle we reach finally the question of what the creditor should be given to compensate it for the receipt of the amount of its claim over a period of time. 5 Collier on Bankruptcy (15th ed., 1979) 1325–26 puts it thus:

"An appropriate discount factor must be arrived at by the Court, so as to fairly discount value proposed to be given in the future on account of the allowed secured claim."

The text then goes on to say:

"The simplest method of equating the present value of deferred future payments with the amount of the allowed secured claim is to propose interest payments over and above the face amount of the allowed secured claim at whatever interest rate is equivalent to the discount rate selected by the Court or agreed upon by the parties."

We find this "simplest method" appealing and adopt it. There remains then the determination of the discount rate to be applied. The parties have not agreed upon one and it is therefore left to us to select one.

■ In this connection the following provision of the Internal Revenue Code has come to our attention (26 U.S.C. § 6621):

"Sec. 6621 [1954 Code]. (a) In General.–The annual rate established under this section shall be such adjusted rate as is established by the Secretary under subsection (b).

(b) Adjustment of Interest Rate.–The Secretary shall establish an adjusted rate of interest for the purpose of subsection (a) not later than October 15 of any year if the adjusted prime rate charged by banks during September of that year, rounded to the nearest full percent, is at least a full percentage point more or less than the interest rate which is then in effect. Any such adjusted rate of interest shall be equal to the adjusted prime rate charged by banks, rounded to the nearest full percent, and shall become effective on February 1 of the immediately succeeding year. An adjustment provided for under this subsection may not be made prior to the expiration of 23 months following the date of any preceding adjustment under this subsection which changes the rate of interest.

(c) Definition of Prime Rate.–For purposes of subsection (b), the term "adjusted prime rate charged by banks" means 90 percent of the average predominant prime rate quoted by commercial banks to large businesses, as determined by the Board of Governors of the Federal Reserve System."

The rate currently in force pursuant to this provision, having become effective February 1, 1980, is 12%. The rate itself and the technique provided by the statute for deriving the rate, seem to us to provide an equitable solution to determining "an appropriate factor" to be applied in the 11 U.S.C. § 1325(a)(5)(B)(ii) situation. It is reasonably responsive to current economic conditions, is subject to periodic revision, yet is not an unfair burden on Chapter 13 debtors. We therefore adopt the technique of 26 U.S.C. § 6621 and the current rate of 12%. It will be understood that we mean 12% per annum simple interest. It should further be understood that we contemplate that apart from an adjusting payment, level payments over the term of the plan incorporating principal and interest will be provided in the plan. Using the present case where collateral value of $8,141.00 is involved by way of illustration, the plan should provide for an adjusting payment of $141.00 to reduce the value involved to a convenient round figure of $8,000.00. Assuming then a three year plan, with an $8,000.00 principal amount to be paid, monthly payments of $265.72 for each of 36 months should be provided in the plan. If there is to be a four year payout, assuming $8,000.00 to be paid at 12% then $210.68 per month for each of 48 months should be provided in the plan. (The monthly payment figures may be found in publications containing tabulations of such figures at different rates of interest over different periods of time.)

The foregoing constitutes our findings of fact and conclusions of law in this case.

The objections of the creditor to confirmation of the plan will be sustained unless within 20 days of the date hereof, the plan is amended, first, to provide for lien retention, and second, to provide appropriate monthly payments at 12% simple interest to the objecting creditor on its allowed secured claim. In the event that the plan is not amended within 20 days, the petition will be dismissed.

I concur in the foregoing decision insofar as it adopts the formula provided by 26 U.S.C. § 6621, and the current rate of 12% per annum simple interest.