In re AMERICAN MARINER
INDUSTRIES, INC., Debtor.

CROCKER NATIONAL BANK, a National Banking Association, Plaintiff,

v.

AMERICAN MARINER INDUSTRIES,
INC., a California Corporation,
Defendant.

Bankruptcy No. SA 80–03623 PE.
Adv. No. SA 81–0163.

United States Bankruptcy Court,
C. D. California.

April 23, 1981.

**712**

James E. Carter, Santa Ana, Cal., for debtor/defendant.

John A. Graham, Frandzel & Share, Beverly Hills, Cal., for plaintiff.

## MEMORANDUM OF DECISION

PETER M. ELLIOTT, Bankruptcy Judge.

The first issue to be decided is, if the value of the collateral is not depreciating, whether an undersecured creditor is entitled to interest on the present value of the collateral as adequate protection. The second issue is whether the debtor will be unable to confirm a plan because the plaintiff has a right to elect, under § 1111(b) of the Code, to be treated as a secured creditor in the full amount of its claim.

## INTEREST AS ADEQUATE PROTECTION

■ For purposes of this decision only, I find the value of the bank's collateral to be $110,000, 11 U.S.C. § 506(a). The bank reasons that one of its rights as a secured creditor is the right, upon default, to take possession of its collateral, liquidate it and loan the $110,000 out at interest. At the bank's request, I take judicial notice that the current prime rate is 18% per annum. This theory would require the debtor to pay $1,770.00 per month (18%) as adequate protection.

The debtor filed its Chapter 11 case on December 12, 1980. A primary cause of its financial difficulty is the general decline of the market for recreational boats. At the present time, the debtor seems to be making a successful transition to the manufacture of commercial barges. The debtor has paid $7,300 to plaintiff bank for use of inventory and cash collateral pursuant to my preliminary order for adequate protection.

■ The debtor shows a small profit on current operations. I find that the machinery, equipment, tools, molds, etc., which are collateral for plaintiff's loan, are necessary for an effective reorganization and therefore the lack of equity is not relevant, § 362(d)(2).

I disagree with that part of the decision in *Matter of Anchorage Boat Sales, Inc.*, (Bkrtcy.E.D.N.Y.) 4 B.R. 635 (1980) that holds an undersecured creditor was entitled to relief of stay because it would not be compensated for the loss of use of its money during the gap between the hearing and confirmation. The rationale is that the creditor would not receive the "indubitable equivalent" of the value of its collateral, citing *In re Muriel Holding, Corp.*, 75 F.2d 941 (2 Cir.).

*Anchorage Boat Sales, supra,* recognizes that the undersecured creditor is not entitled to interest on its secured claim, § 506(b).

Although *Muriel Holding, supra,* is the source of the phrase "indubitable equivalent" as used in § 361(3), it should be remembered that the ruling in *Muriel Holding* involved inadequate protection of a secured creditor being "crammed down" under § 77(b) of the Bankruptcy Act. Therefore, indubitable equivalent in the context of the *Muriel Holding* facts may be precedent for issues arising upon confirmation under § 1129(b)(2)(A)(i)(II), but not to require interest to be paid to an undersecured creditor for being temporarily deprived of possession or use of its collateral.

■ Section 506(b), allowing interest on a secured claim to the extent that the collateral has a value greater than the amount of the claim codifies the law under the former Bankruptcy Act, House Report No. 95–595, 95th Congress, 1st. Session, (1977), U.S. Code Cong. & Admin. News 1978, p. 5787. The corollary is that interest is not allowed on undersecured claims. This principle applied to Chapters X and XI as well as

straight liquidation bankruptcies, 6 *Collier on Bankruptcy* (14th Ed.) ¶ 9.08.

Section 506(b) is applicable in Chapter 11 cases, as well as in Chapter 7 and Chapter 13 cases, see § 103(a). The Bankruptcy Reform Act of 1978 is a carefully drafted piece of legislation. Where Congress intended a secured party to be compensated for delay in realization of their collateral or its value, Congress said so. See § 1129(b)(-2)(A)(i)(II) and § 1325 (a)(5)(B)(ii).

■ The legislative history to § 361, as to adequate protection, refers to *Wright v. Union Central Life*, 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940) as requiring Fifth Amendment protection of a secured creditor. That case upheld the constitutionality of § 75(s) of the Bankruptcy Act. Section 75(s) granted a farmer a three year moratorium against foreclosure upon certain conditions and gave the farmer the election, at any time within three years, to purchase the property free and clear of all liens and encumbrances for its then appraised value. Justice Douglas for the court stated, at page 278, 61 S.Ct. at page 199,

> Safeguards were provided to protect the rights of secured creditors, throughout the proceedings, to the extent of the value of the property. . . .
> There is no constitutional claim of the creditor to more than that.

In conclusion, it is clear to me that the right of an undersecured creditor to receive interest on the value of its collateral is not constitutionally protected under the Fifth Amendment or is it required as a matter of policy under § 361.

■ In addition, *Anchorage Boats* suggests the worst case, of confirmation not taking place for two or three years, or not at all. I submit that the debtor should be permitted a reasonable period of time (not two or three years) to reorganize. If the debtor is not able to effectuate a plan, or if delay becomes unduly burdensome, the bank can move to dismiss the Chapter 11 case or convert it to a Chapter 7 case under § 1112(b).

## THE § 1111(b) ELECTION

■ The bank argues that the stay should be lifted because it has the right under § 1111(b) to elect to prove its claim as fully secured for approximately $320,000, and that the debtor is required to, but is not capable of, paying $320,000 under a plan. This is a bootstrap argument. The bank has not made that election, and may not because it would thereby waive its right to assert a deficiency claim, 5 *Collier* (15th Ed.) ¶ 1111–22. Also, a creditor may not make the § 1111(b) election where the collateral is sold under § 363 or is to be sold under the plan, 5 *Collier* (15th Ed.), ¶ 111–21.

If the debtor proposes a plan which it intends to confirm over the bank's objection by "cramming down" under § 1129(b) and the bank makes an election under § 1111(b), the net result would be to require the debtor to pay the greater of principal plus interest to the date of bankruptcy, or approximately $320,000, or deferred cash payments totalling at least the allowed amount of the claim (allowed under § 506(a)), as of the effective date of the plan, of the value of the collateral. See 5 *Collier on Bankruptcy* (15th Ed.) ¶ 1111.02.

In this case, for example, assuming a six year pay out, under § 1129(b) and using an interest rate of 20% per annum, the pay out would be $2,634.81 per month for a total of $189,706. The larger total of $320,000 would have to be paid. Therefore, the debtor would have the burden of paying $4,444 for 72 months. A payment of $4,444 per month may or may not be feasible for this debtor. I do not know at this stage of the case.

The debtor must also consider the formidable obstacle presented by the bank's rejection of any plan should it forego the § 1111(b) election. In that event, the bank would be holding an unsecured claim for $220,000 which would require acceptances totalling more than $440,000 just to offset it, § 1126(d). Since unsecured creditors total $626,000 (not including the bank), that is not impossible.

This type of case is not often worked out without the debtor reaching some kind of an accommodation with its major secured creditor.

The debtor deserves an opportunity to try to reorganize. If no progress is made within a reasonable time, the bank can reapply for relief of stay, or move to dismiss or for conversion to a Chapter 7.

■ The debtor has offered to pay interest on the value of the collateral, $1,770 per month. Although I hold that no interest is due and although no evidence of economic depreciation has been presented, I find that $1,770 per month is adequate protection for any depreciation or depletion of the collateral that may occur. To the extent that amount exceeds depreciation or depletion, it shall be applied on the amount of the claim allowed as secured under § 506(a).

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. The within memorandum of decision shall constitute my findings of fact and conclusions of law.

Plaintiff's counsel is to prepare and lodge an order in conformance herewith.