**In re Mary STRONG, Debtor.**

**Bankruptcy No. 81–20831.**

United States Bankruptcy Court, W. D. Tennessee, W. D.

May 22, 1981.

Ben T. Wages, Memphis, Tenn., for debtor.

Allen Gardner, Memphis, Tenn., for Memphis Bank and Trust Co.

MEMORANDUM ORDER DENYING OB-JECTION TO CONFIRMATION OF DEBTOR'S *MODIFIED* CHAPTER 13 PLAN

DAVID S. KENNEDY, Bankruptcy Judge.

This matter is before the Court upon the objection of Memphis Bank & Trust Compa-

ny ("Objector") to the confirmation of the modified Chapter 13 plan filed by the debtor, Mary Strong ("Debtor").

After hearing evidence and argument of counsel and consideration of the record, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

On April 2, 1980, the debtor, who has a second grade education, purchased a used 1975 Chevrolet automobile from Tom Bell Chevrolet Company of Memphis, Tennessee, for a cash price of $2,206.39; a cash down payment of $300.00 was made leaving an unpaid cash price balance of $1,906.39; miscellaneous fees and charges aggregated $237.08 leaving an unpaid balance amount financed of $2,143.47; the finance charge was $793.17; the annual percentage rate was *32.26%* leaving a total payment of $2,936.64 to be paid by the debtor in 24 monthly installments of $122.36 each.

Subsequently, Tom Bell Chevrolet Company assigned the "paper" on this 1975 Chevrolet automobile to the Objector herein.

Debtor has been employed at Jones Truck Lines Company for approximately six years where she performs maintenance work. She also has a second job. Her combined income is approximately $530.00 per month (although the income at the second job fluctuates). Her combined monthly expenses are approximately $341.29 (although this amount varies depending on the circumstances).

Due to circumstances beyond her control, on March 6, 1981, the Debtor filed a Chapter 13 case and plan seeking rehabilitation relief under the "Adjustment of Debtors of an Individual With Regular Income" under the Bankruptcy Reform Act of 1978. Without question, this automobile is essential and vital to an effective rehabilitation of the Debtor.

Debtor's modified plan, providing for $40.00 on the 1st and 15th of each month, proposes to pay the Objector and all creditors 100% of the claims. Since the Objector's claim is to be paid in deferred monthly payments under the plan, the Debtor proposes to pay 12% interest in order to give "present value". (Objector asserts that its net claim is $1,871.88). Of course, the Objector shall retain its lien on this automobile. Adequate protection is not in issue in this matter.[1]

Objector argues primarily that the plan is not feasible and the 12% interest factor proposed by the Debtor is substantially less than the contractual A.P.R. of 32.26% and is, therefore, insufficient.

## QUESTION PRESENTED

The ultimate question for judicial determination is whether the Debtor's modified plan should or should not be confirmed.

## CONCLUSIONS OF LAW

The Constitutional grant of power to Congress to legislate on the subject to bankruptcies has long been considered the power to impair the obligations of contracts for an overriding purpose. *Hanover Nat. Bank v. Moyses*, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113.

Chapter 13 of the Bankruptcy Reform Act of 1978 provides rehabilitation relief by "Adjustment of Debtors of an Individual With Regular Income", superseding Chapter XIII of the Bankruptcy Act of 1898.

A Chapter 13 plan shall be confirmed if the requirements of 11 U.S.C. Section 1325(a)(1) through (6) are satisfied.

11 U.S.C. Section 1325(a)(1) through (6) provides as follows:

"(a) The Court shall confirm a plan if—
   (1) the plan complies with the provisions of this Chapter and with other applicable provisions of this title;
   (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
   (3) the plan has been proposed in good faith and not by any means forbidden by law;

---

1. See Order dated April 29, 1981. Proper insurance is in effect.

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the· allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan."

As stated, 11 U.S.C. Section 1325(a)(5)(B) provides that the plan may be confirmed as to the holder of a secured claim if:

"(i) the plan provides that the holder of such claim retain the lien securing such claim."

As stated, the text of Section 1325(a)(5)(b)(ii), in pertinent part, provides:

"(5) with respect to each allowed secured claim provided for by the plan—

\*  \*  \*  \*  \*  \*

"(B)(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim."

■ Section 1325(a)(5)(b)(ii) mandates that a holder of a secured claim receive under the plan "value as of the effective date of the plan" equal to the allowed amount of the claim. The import of the emphasized language is construed as the "present value" as of the date of the confirmation inclusive of deferred cash payments payable over time in installments equal to the aggregate amount of the claim. See, 5 *Collier On Bankruptcy*, Para. 1325.01(2) at pp. 1325–26 (15th Ed.1979).

■ To understand Section 1325(a)(5)(B), it is necessary to know that the allowed amount of a secured claim is the value of the property securing the claim. 11 U.S.C. Section 506. What the statute thus means is that as to a secured creditor the Chapter 13 plan can be confirmed if the plan provides that the holder of a secured claim retain its lien and be paid the value of its collateral as of the effective date of the plan. See, *In re Lum*, infra. Although not free from doubt, the Court shall allow the claim of the Objector as being fully secured in the amount of $1,871.88.

■ The courts have held that a plan complies with the requirements of 11 U.S.C. Section 1325(a)(5)(B)(ii) if it provides that the secured holder will receive the "present value" of his allowed claim (not, ipso facto, the contractual annual percentage rate) which takes into account the discount of money to be received in the future. Where, as here, the Objector is to be paid in installments over time, the Objector is entitled to a percentile interest factor, to protect it from loss caused by its being paid over a period of time. Cf. 11 U.S.C. Section 1129; See, House Report No. 95–595, 95th Cong. 1st Sess. 412 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6368.

With reference to determining the appropriate rate of interest on a secured claim, the courts have endorsed basically two methods of calculating such interest: (1) the current legal rate of interest allowable by state law and (2) the rate of interest on tax liabilities fixed by 26 U.S.C. Section 6621.

The following cases are cited as examples of these methods:

In *In re Crockett*, 3 B.R. 365 (Bankr.Ct.N. D.Ill.1980), the Court held that in order to give the creditor "present value", an incremental adjustment of 9% per annum must be added to the fair market value of the secured claim notwithstanding the contractual rate. Specifically, at p. 368, the Court stated:

"A convenient yardstick to determine necessary incremental adjustments is the current legal rate of interest. The current general interest rate allowable in Illinois is 9% per annum. Ill.Rev.Stat., ch. 74, Sec. 4, as amended by P.A. 81–1097, effective Nov. 8, 1979, 7 Ill.Legis. Serv.1979 (West)."

In *In re Lum*, 1 B.R. 186 (Bankr.Ct. E.D. Tenn.1979), the Court held in a consumer Chapter 13 case that a 10% interest rate was appropriate for deferred cash payments (even though the then prevailing prime rate was greatly in excess of 10%). Specifically, at p. 188, the Court stated:

"The compensation to which the creditor is entitled is the present value that takes into account the discount of money to be received in the future. *It is not interest of the contractual kind.* Interest on a secured claim stops with the filing of a petition in bankruptcy except in some instances. 11 U.S.C. Section 506. Nevertheless, the application of a percentage to the balance to be paid in the future is one method of allowing for the risk and loss of use resulting from the postponement of payment. The question is what percentage rate the court should allow. (Emphasis added.)

"Where there is no contractual rate of interest courts sometimes allow the 'legal' rate as the proper payment for the loss of use of money. C. McCormick, Handbook of the Law of Damages, Section 51 at 209 (1935). The legal rate is the rate allowed on judgments. In Tennessee that is an effective rate of 8% per annum. Tenn. Code Ann. Section 47–14–121 (1979 Repl. Vol.)

"Of course, in this case there was a contract. The court has not discovered in it any stated rate of interest, though it does show that the 'finance charge' produced an 'annual percentage rate' of 16.8%. The court also notes that this was an installment sales contract between a seller and a buyer where the seller in effect lends the purchase money but the buyer does not receive any money. The transaction can also be viewed as a sale where the seller charges more by means of a 'time-price differential', because of the installment payment. Furthermore, the Court *is not aiming to produce a lender's profit but only to protect the creditor from loss caused by its being paid over a period of time.* (Emphasis added.)

"The court's determination can at best be a rough approximation. But, having considered the creditor's argument, its contract, and the Tennessee statutes, being not wholly removed from economic concerns, and being required to make a decision, it is the opinion of the court that GMAC is entitled to be paid an effective rate of interest of 10% per annum on the unpaid balance of its $5,000.00 allowed secured claim.

"For purposes of this memorandum and orders pursuant to it 'effective rate of interest' is defined in Tenn. Code Ann. Section 47–14–102(2) (Repl.Vol.1979). Since the payments are to be made monthly the trustee may determine and allocate the payments by the 'actuarial method.' See Tenn. Code Ann. Section 47–14–102(5) (Repl.Vol.1979)."

*In re Lum*, supra, has been cited with approval by many courts. See, for example, *In re McLeod*, 5 B.R. 520 (Bkrtcy., N.D.Ga. 1980), a Chapter 13 case, where the court held that the appropriate time value was 10% per annum and declined to measure the time value at 26.29% per annum, the contractual annual percentage rate, urged by the creditor, G.M.A.C.

In *In re Ziegler*, 6 B.R. 3, 6 B.C.D. 194 (Bkrtcy., S.D.Ohio 1980), the Court allowed a "discount rate" of 12% per annum computed under the technique of the Internal Revenue Code, 26 U.S.C. Section 6621. Specifically, in *Ziegler*, the Court stated at pp. 195–196 as follows:

"(w)e reach finally the question of what the creditor should be given to compensate it for the receipt of the amount of its claim over a period of time. 5 *Collier On Bankruptcy*, (15th ed.1979) 1325–26 puts it thus:

'An appropriate discount factor must be arrived at by the court, so as to fairly

discount value proposed to be given in the future on account of the allowed secured claim.'

"The text then goes on to say:

'The simplest method of equating the present value of deferred future payments with the amount of the allowed secured claim is to propose interest payments over and above the face amount of the allowed secured claim at whatever interest rate is equivalent to the discount rate selected by the court or agreed upon by the parties.'

In *In re Smith*, 4 B.R. 12, 6 B.C.D. 424 (Bkrtcy.E.D.N.Y.1980), the court allowed a "discount rate" equivalent to the contract rate (12.68%) although it should be noted that the Court relied upon the provisions of Section 1325(a)(5)(B)(ii) in reaching its conclusion re "present value".

In *In re Anderson*, 6 B.R. 601 (Bkrtcy.S. D.Ohio 1980), the court allowed an interest factor of 9.92% per annum arising out of a security agreement providing for a 17.2% A.P.R. and stated at p. 610 as follows:

"*If the rate proposes to pay a secured claim (in addition to the valuation of the collateral) finance charges greater than current market or 'discount rates', confirmation of the plan would be denied. If the rate proposed is less than the consensual contract finance charge, the court must determine that the rate is reasonable in light of the particular facts*; such as: the type of collateral involved; the likelihood of appreciation or depreciation in value; the immediate liquidation potential; the motivation or purpose of the secured claimant in not cooperating in a debt adjustment; the length of the proposed extension compared to the termination rate of the original contract between the parties; and, the percentage amounts of the dividends to be paid also to unsecured claims (including the unsecured portion of secured creditors' claims.) Again adverting to reaffirmations and redemptions, *the most acceptable and feasible rate to be proposed by a debtor would approximate the consensual contract rate, assuming it was in fact a reasonable consensual rate and not imposed by the lender to exploit a naive, unsophisticated debtor or a debtor in desperation. Any reasonable proposal would be far more advantageous to all parties than capricious litigation.*" (Emphasis added.)

## CONCLUSIONS

■ The Court has considered carefully the Debtor's budget and available income from all sources derived and concludes under a totality of the particular facts and circumstances that the Debtor has proposed her bona fide, good faith, best effort and that the modified plan, notwithstanding the allegations of the Objector, is meaningful, sufficiently feasible and reasonable based on the exact circumstances. See, S.Rep. No. 95–989, 95th Cong. 2d Sess. 13, reprinted in (1978) U.S.Code Cong. & Ad.News 3, 5787; see also proposed Senate No. 863, Bankruptcy Amendments Act of 1980, introduced on April 2, 1981.

■ Under the particular circumstances of this case and relying upon *In re Ziegler*, supra, the Court shall allow the Objector, in this case, an interest rate of 12% per annum computed under the technique of the Internal Revenue Code, 26 U.S.C. Section 6621. Although the allowed 12% falls far short of the Objector's contractual annual percentage rate of 32.26%, the Court finds under the particular facts and proof adduced that the requirements of 11 U.S.C. Section 1325(a)(5)(B)(ii) have been met by the Debtor. The Objector's pre-Chapter 13 rate of 32.26% is, inter alia, unreasonable and inequitable in light of the particular facts and would jeopardize an otherwise good plan to the detriment of other affected creditors and particularly the holders of unsecured claims. In a liquidation Chapter 7 case, holders of unsecured claims would receive nothing and in all probability the Objector herein would be confronted with a deficiency.

The Court further concludes that all the remaining requirements of 11 U.S.C. Section 1325(a) have been met; and good cause exists to approve a plan longer than three

years, but less than five years pursuant to 11 U.S.C. Section 1322(c).

The Court notes that the Debtor is extremely hardworking and deserving. Her plan is austere and ambitious. She should be given an opportunity to complete the plan. If she defaults under the terms of the modified plan, of course, the Objector may file an appropriate motion to convert or dismiss the Chapter 13 case under 11 U.S.C. Section 1307(c) or file a complaint for reclamation under 11 U.S.C. Section 362(d) or file a motion for adequate protection under 11 U.S.C. Section 363(e).

Based on all the foregoing, the entire record herein and equitable principles under 28 U.S.C. Section 1481, the Court denies the Objector's objection to the Debtor's modified plan.

IT IS THEREFORE ORDERED:

1. That the objection to confirmation of the Debtor's proposed modified plan filed by the Memphis Bank and Trust Company based on the provision of 11 U.S.C. Section 1325(a) is hereby denied.

2. That the allowed secured claim re the 1975 Chevrolet automobile is $1,871.88 to be paid under the Chapter 13 modified plan at the rate of $60.00 per month; plus the time value of said sum computed at the rate of 12% per annum in this case.

3. That the Debtor is to continue to maintain proper insurance on said automobile during the term of the plan.

4. That the Chapter 13 Trustee is hereby directed to make payments to Memphis Bank and Trust Company in accordance and consistent with the foregoing.

5. A separate order has been entered confirming the Debtors' Chapter 13 modified plan in accordance and consistent with the foregoing and the entire record herein.