Re: Appropriate Interest Rate on Secured Claims.

In the Matter of Sharon KAUFFUNGER, Debtor.

In the Matter of Errol GRANT, Debtor.

In the Matter of Joseph Paul MAMOLA, Sr. and Cathy Lee Mamola, Debtors.

Bankruptcy Nos. 80–04720, 80–05420, 80–05103.

United States Bankruptcy Court, D. New Jersey.

Dec. 23, 1981.

Linda Irene-Greene, Teaneck, N. J., for debtors.

Morgan, Melhuish, Monaghan & Spielvogel, Livingston, N. J. by Elliott Abrutyn, Livingston, N. J., for General Motors Acceptance Corp.

John J. Scura, Wayne, N. J., standing trustee.

D. JOSEPH DeVITO, Bankruptcy Judge.

Though the above captioned cases were not consolidated, this Opinion is intended to dispose of individual questions reserved at the confirmation hearings on the plans submitted in each, all having to do with the determination of the appropriate interest rate on payments under the respective plans. It is further intended that this Opin-

ion act as a comprehensive guide to future action on all such similar interest questions.

The generic question presented by the first three cases at bar, *In re Mamola, In re Kauffunger,* and *In re Grant,* in which debtors' Chapter 13 plans were confirmed pending a decision on the discount factor, is, "What is the appropriate discount rate on deferred payments pursuant to Section 1325[a][5][B][ii] of the Bankruptcy Code?" Bankruptcy Code § 1325[a][5][B][ii], specifying the cramdown standard applicable to secured creditors, sets forth two necessary conditions for the cramdown of a Chapter 13 plan: (1) that the plan provides for the retention of the lien securing the allowed secured claim, and (2) that the present value of the property to be distributed under the plan to the secured creditor is not less than the allowed secured claim. As an alternative thereto, the debtor may surrender to the secured creditor the property securing the claim, pursuant to subsection [a][5][C].

■ The amount of the allowed secured claim is coextensive with the value of the property securing the claim. (Hence, the determination of the one follows upon the determination of the other, whether it be a question of the amount of the allowed secured claim as of the date of the filing of the petition or of the value of subject property as of the effective date of the plan.) As noted in the legislative history, the secured creditor's lien

> only secures the value of the collateral and to the extent property is distributed of a present value equal to the allowed amount of the creditor's secured claim the creditor's lien will have been satisfied in full. Thus the lien created under section 1325[a][5][B][i] is effective only to secure deferred payments to the extent of the amount of the allowed secured claim. To the extent the deferred payments exceed the value of the allowed amount of the secured claim and the debtor subsequently defaults, the lien will not secure unaccrued interest represented in such deferred payments.

124 Cong.Rec. H11,107 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards); 124 Cong.Rec. § 17,423 (daily ed. Oct. 6, 1978) (remarks of Sen. De Concini).

The issue in the cases *sub judice* is the proper determination of interest rates for secured claims; specifically, whether such rates must be the same as those fixed by contract.

■ Bankruptcy Code § 506[b], applicable in Chapter 13 as well as in Chapter 7 and Chapter 11 cases, *see* Bankruptcy Code § 103[a], allows interest on a secured claim to the extent that the collateral has a value greater than the amount of the underlying claim. *See, e.g., In re Smith,* 4 B.R. 12, 13, 6 B.C.D. 424, 426, 2 C.B.C.2d 77, 79 (Bkrtcy. E.D.N.Y.1980). Bankruptcy Code § 506[a] provides that an undersecured creditor has a secured claim to the extent of the value of his collateral, and an unsecured claim for the balance of his claim. Interest on undersecured claims is not allowed. 11 U.S.C. § 506[b]. *See In re American Mariner Indus.,* 10 B.R. 711, 7 B.C.D. 614, 614 (Bkrtcy. C.D.Cal.1981), *In re Anderson,* 6 B.R. 601, 608, 6 B.C.D. 1155 (Bkrtcy.S.D.Ohio 1980).

In a legislative obeisance to the time-value of money, § 1325[a][5][B][ii] requires that the creditor receive payments with the same economic value on the effective date of the plan as a lump-sum payment equal to the value of the collateral. That, in fact, is the very meaning of the term the "present value" of the allowed secured claim. Otherwise put, "present value" is the allowed amount of the creditor's secured claim "plus incremental adjustments." *In re Crockett,* 3 B.R. 365, 368 (Bkrtcy.N.D.Ill.1980). The problem of determining the present value of the proposed deferred cash payments, as of the effective date of the plan, whereby, as mandated by § 1325[a][5][B][ii], the creditor will receive economic value equivalent to the value of the collateral, depends, in its turn, on the discount rate to be applied to the allowed amount of the secured claim, the idea, of course, being that the appropriate rate is one that compensates the secured creditor for the delay in enabling him to realize on the secured collateral. *See, e.g.,*

*In re Smith*, 4 B.R. at 13, 6 B.C.D. at 425–26, 2 C.B.C.2d at 79.

This Court notes, without feeling, however, that it is itself bound thereby, that the bankruptcy courts have utilized a wide variety of approaches in determining the appropriate discount rate, to wit: (1) the stated rate of interest in the contract, *In re Cooper*, 11 B.R. 391 (Bkrtcy.N.D.Ga.1981), *In re Smith, supra* (12.68%), *In re Rogers*, 6 B.R. 472 (Bkrtcy.S.D.Iowa 1980) (13%), *In re Anderson, supra* (17.2%), *In re Clements*, 11 B.R. 38 (Bkrtcy.N.D.Ga.1981) (14.34%); (2) the rate of interest determined under section 6621 of the Internal Revenue Code, *In re Caudle*, 13 B.R. 29, 7 B.C.D. 1301 (Bkrtcy. N.D.Tenn.1981), *In re Strong*, 12 B.R. 221 (Bkrtcy.W.D.Tenn.1981), *In re Ziegler*, 6 B.R. 3 (Bkrtcy.S.D.Ohio 1980), *In re Busman*, 5 B.R. 332 (Bkrtcy.E.D.N.Y.1980); (3) the legal rate of interest, *In re Crockett, supra, In re Williams*, 3 B.R. 728 (Bkrtcy.N. D.Ill.1980); (4) the legal rate of interest with an upward adjustment because of economic conditions, *In re Lum*, 1 B.R. 186 (Bkrtcy.E.D.Tenn.1979); (5) a rate based on the prevailing prime interest rate, *In re Miller*, 4 B.R. 392 (Bkrtcy.S.D.Cal.1980); (6) the three-month Treasury Bill rate with an upward adjustment of one-half of one per cent, *In re Willis*, 6 B.R. 555, 6 B.C.D. 1101 (B.Ct.N.D.Ill.1980) (7.58%); (7) a rate determined by averaging the contract rate, the maximum interest rate allowed under state law in installment sales contracts, and an unexplained "leveling factor" of 6%, *In re Hyden*, 10 B.R. 21, 6 B.C.D. 1392, 3 C.B.C.2d 751, CCH Bankr.L.R. 67,735 (Bkrtcy.S.D. Ohio 1980); and (8) an interest rate midway between the sales contract rate of 12¼% previously agreed upon by the parties and the prevailing rate of interest charged by credit unions, *In re Kibler*, 8 B.R. 957 (Bkrtcy.D.Hawaii 1981) (13¾%).

■ None of the above decisions is controlling on this Court. However, the holding in *In re Advance Printing & Litho Co.*, 277 F.Supp. 101 (W.D.Pa.1967), *aff'd per curiam*, 387 F.2d 952 (3d Cir. 1967) that a bankrupt must, under controlling state law, pay the full amount of the allowed secured claim including the contract rate of interest, notwithstanding the difficulty of the bankrupt's complying therewith or possible prejudice to the general unsecured creditors, is *stare decisis* and is binding on this Court. The bankruptcy court in *In re Advance Printing & Litho Co.*, slip op., No. 64–50 (B.Ct.W.D.Pa. Jan. 10, 1967) was reversed on appeal precisely because it modified the contract rate of interest. *Cf. In re Union Deposit Center Equities, Ltd.*, 639 F.2d 1045 (3d Cir. 1981) (*held* : Chapter XII limited partnership debtor, owner of a shopping center, was obligated to pay the contract rate of interest on a short-term mortgage fully mature as of the date of the filing, since such circumstances warranted neither an extension of the terms of the mortgage nor a reduction in the interest rate. *Id.* at 1049).

Again, in *In re Schrader Body, Inc.*, 315 F.Supp. 1349, 1351 (W.D.Pa.1970), the presiding district court judge, in holding that a fully secured creditor is entitled to the interest specified in the security agreement on the unpaid balance of the debt to the date of payment, in considering the "high rate of interest", stated:

> The fact that the high rate of interest specified by the parties seems harsh and oppressive to a court of bankruptcy is not a reason to change the terms of valid and subsisting contracts.

Also see *Manufacturers' Finance Co. v. McKey, Trustee in Bankruptcy*, 294 U.S. 442, 55 S.Ct. 444, 79 L.Ed. 982 (1935).

■ In accord with the foregoing principles aimed at preserving to the secured creditor the benefit of his bargain, this Court feels that the contract rate of interest should not be disturbed.[1] That determination does not really resolve, however, the issue at bar, namely, determination of the appropriate discount factor in a Chapter 13 cramdown. Though, clearly, interest should

---

1. Subject, needless to say, to the state usury law, see N.J.S.A. 2C:21–19, not an issue in the cases under consideration.

not be charged on interest, Bankruptcy Code § 1325[a][5][B][ii], providing for payment to secured creditors in full, does not specify a discount rate on deferred payments. Nevertheless, the legislative history in both Houses of Congress indicates that there is a presumption that a proper discount rate and the rate set forth in the parties' interest bearing agreement are equivalent. H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 352–53 (1977); S.Rep.No. 95–989, 95th Cong., 1st Sess. 62–63 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Therefore, absent evidence rebutting a presumption that the discount rate and the contract rate are equivalent, this Court holds, as did the bankruptcy courts in *Smith, Clements*, and *Rogers, supra*, that the proper discount rate is the rate of interest fixed by contract.

■ The plans confirmed in the captioned Chapter 13 cases on March 5, 1981, subject only to a decision on the discount rate, all propose to pay the secured creditor, General Motors Acceptance Corporation (GMAC), 10 per cent annual interest on the unpaid portion of the claim. In all three cases, GMAC holds a valid, duly perfected security interest in the encumbered property, motor vehicles purchased by the debtors' executing an installment sales contract and sought to be retained by them. Rejecting the proposed plans because they fail to reflect the contract rate of interest, GMAC seeks from each debtor the interest specified in the security agreement, ranging from 17.91% for Mamola, to 12.68% for Kauffunger, to 12.60% for Grant.

No supporting empirical evidence whatsoever has been introduced by the debtors, on whom the burden rests, to persuade this Court that GMAC should not receive the annual percentage rate specified in the contract. The establishment of any other interest rate in the absence of such evidence would be purely arbitrary. Accordingly, GMAC's objections to the proposed interest rate on the aforementioned debtors' Chapter 13 plans are sustained.

For the sake of providing more complete guidelines to future action, even though such considerations are unnecessary to a disposition of the three captioned cases, the Court remarks the following pertinent passage (accompanied by an illustration) in 5 Collier on Bankruptcy ¶ 1129.03, at 1129–65 (15th ed. 1981):

The appropriate discount rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration of the quality of the security and the risk of subsequent default.

■ It is the considered opinion of this Court, after careful consideration of all the interest methods used thus far, that the best method for responding to the vicissitudes of the economic marketplace is to determine the prevailing market rate charged for similar loans at the time of the confirmation hearing. *Accord, In re Virginia Foundry Co.*, 9 B.R. 493, 498 (W.D.Va. 1981), *In re Benford*, 14 B.R. 157, 8 B.C.D. 117, 119 (Bkrtcy.W.D.Ky.1981), *In re Cooper, supra* at 395. To limit consideration of the appropriate discount factor to the contract rate of interest, save where fluctuating economic conditions are such as to warrant a determination of the prevailing market rate as of the date of the hearing, should serve to provide the creditor present value, as mandated by the statute, in a readily obtainable way while avoiding the needless time and expense entailed by a sophisticated mathematical/economic analysis of the discount rate in any given case. Accordingly, when a rate other than the contract rate of interest is sought in a Chapter 13 cramdown, the burden is on the party requesting such rate to make out a prima facie case establishing the conformity between such rate and the prevailing market rate for similar loans as of the effective date of the plan.

An Order is to be submitted in each case.