**In the Matter of Jesse J. COOPER, Jr., Judith E. Cooper, Debtors.**

**CHRYSLER CREDIT CORPORATION, Plaintiff,**

v.

**Jesse J. COOPER, Jr., Judith E. Cooper, Defendants.**

**Bankruptcy No. 80–01472A.**

United States Bankruptcy Court, N. D. Georgia.

May 28, 1981.

---

## ORDER

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

Pursuant to order of the court dated September 16, 1980 [1] a hearing was held on January 27, 1981 to hear evidence on the appropriate amount of compensation which should be added to the allowed claim which

---

1. *In re Cooper*, 6 B.C.D. 81, 7 B.R. 537 (Bkrtcy. N.D.Ga.1980).

is to be paid under Section 1325(a)(5)(B)(ii) by the Debtor under the loan over a period of three years. The allowed claim of Chrysler Credit is $3,100, the fair market value to the secured claimant.[2] The claimant, under the plan and as allowed under Code Section 1325(a)(5)(B)(ii) is being required, involuntarily, to extend credit to the debtor for the period of three years covered by the plan. Under Section 1325(a)(5)(B)(i), the debt is secured by a continuing lien on the Chrysler Cordoba in the possession of the Debtor.

The only evidence presented was by the objector to the plan, Chrysler Credit. The Debtor offered no evidence. The primary business of Chrysler Credit is to finance loans to purchasers of motor vehicles from dealers who operate under a franchise agreement with Chrysler Corp., a manufacturer of motor vehicles. Chrysler Credit operates under a license pursuant to the Georgia Motor Vehicle Financing Act.[3] The Georgia Motor Vehicle Financing Act regulates the amount of interest and charges which a Georgia licensee may charge to a borrower respecting a loan under which the lender acquires a security interest and a lien on a motor vehicle.[4]

There are four classes of motor vehicles described in the Financing Act. The classes are divided according to the age of the vehicles. Each class sets out specific and different maximum loan charges which may be assessed by the licensee lender. Class One applies to new motor vehicles of a model less than one year old, on which the finance charge, exclusive of insurance, and other benefits and official fees, shall not exceed $10 per $100 per year. Class Two

---

2. The value of the Chrysler Cordoba was based on evidence of sales at wholesale reported by the Black Book published by National Auto Research Co. and the wholesale valuation book of the National Automobile Dealers Association (NADA), because wholesale is the routine method of ascertaining market value in the absence of a retail marketing capability of a lender.

3. Georgia Code Ann. 96–1001, *et seq.*

4. Georgia Code Ann. 96–1004.
   **96–1004 Finance charge limitation**
   (a) Notwithstanding the provisions of any other law, the finance charge, exclusive of insurance, and other benefits and official fees, shall not exceed the following rates:
   Class 1. Any new motor vehicle designated by the manufacturer by a year model not earlier than the year in which the sale is made—$8 per $100 per year.
   Class 2. Any new motor vehicle not in class 1 and any used motor vehicle designated by the manufacturer by a year model of the same or not more than two years prior to the year in which the sale is made—$11 per $100 per year.
   Class 3. Any used motor vehicle not in class 2 and designated by the manufacturer by a year model not more than four years prior to the year in which the sale is made—$15 per $100 per year.
   Class 4. Any used motor vehicle not in class 2 or class 3 and designated by the manufacturer by a year model more than four years prior to the year in which the sale is made—$17 per $100 per year.
   (b) Such finance charge shall be computed on the unpaid balance on contracts payable in successive monthly payments substantial-ly equal in amount. Such finance charge may be computed on the basis of a full month for any fractional month period in excess of 10 days. A minimum finance charge of $25 may be charged on any retail installment transaction. As used herein, "unpaid balance" shall be determined in accordance with Section 226.8(c) of Regulation Z promulgated by the Board of Governors of the Federal Reserve System pursuant to Title I (Truth in Lending Act) and Title V (general provisions) of the Consumer Credit Protection Act (Public Law 90–321, 82 Stat. 146, et seq.), as the same existed upon its becoming effective on July 1, 1969.
   (c) When a retail installment contract provides for unequal or irregular installment payments, the finance charge may be at a rate which will provide the same yield as is permitted on monthly contracts under paragraphs (a) and (b), having due regard for the schedule of payments.
   (d) Any sales finance company may purchase or acquire or agree to purchase or acquire from any seller any contract on such terms and conditions as may be agreed upon between them. Unless the buyer has notice of the assignment of his contract, payment thereunder made by the buyer to the last known holder of such contract shall be binding upon all subsequent holders.
   (e) In no event will any such assignment bar any right of action against the seller arising as a result of the provisions of this Chapter or will any such assignment bar any defense against the sales finance company or other assignee arising as a result of the provisions of section 96–1008(b).

applies to motor vehicles of a model more than a year and not more than two years old, on which the finance charge may not exceed $13 per $100 per year. Class Three applies to any used motor vehicle of a model not less than two years and not more than four years old on which the finance charge may not exceed $15 per $100 per year. Class Three is the category which applies to a financing of the Cordoba automobile in question; i. e. $15.00 per year per $100.00 loan. Objector's Exhibit 2 is an add-on rate conversion chart of annual percentage rates. The Act provides that the applicable annual percentage rate of finance charges is 25.98% for a 36 month loan on a Class Three vehicle; 26.58% on a Class Three 24 month loan; and 26.62% on a Class Three twelve month loan.[5]

The Act appears to recognize the application of the finance charges and definitions determined by the Federal Consumer Credit Protection Act.[6] Instead of offering evidence, the Debtor merely reiterated reliance on the standard of 10% interest on the principal for the 36 month repayment period of the plan as suggested by *In re Lum*.[7]

■ Alternatively, the Debtor argued that the rate of interest should be 17.59% which is the contract rate of interest on the loan which was in existence on the contract at the time of the filing of the Chapter 13 petition. The court agrees that, in the absence of evidence introduced by the parties, there is a presumption that the contract rate of interest is the appropriate rate of deferred compensation where, in effect, an involuntary loan is required under the cram-down provision of § 1325(a)(5)(B)(ii). However, the parties may introduce evidence which establishes a different rate of earnings currently received by the creditor. For instance, under the Georgia Motor Vehicle Financing Act, the finance charge allowable Annual Percentage Rate applicable

to a new model vehicle, is different from the allowed finance charge on a vehicle when it is classed as a used vehicle.[8] The Cordoba is now two years older than it was when the original loan was financed by Chrysler Credit. The prior finance charge under the Georgia Act on this Cordoba two years ago thus was less than that allowed for older vehicles.

■ The Debtor also argues that the rate of compensation on the claim under Section 1325(a)(5)(B)(ii) should be the rate of interest which the creditor, itself, pays on funds it may be currently borrowing. Such an argument would establish a standard reflecting the credit worthiness of the Chapter 13 creditor rather than the credit risk of the debtor. This argument is misplaced. Section 1325(a)(5)(B)(ii) requires that the plan provide for deferred payments which when received by the secured creditor who has not accepted the plan will equal the present value of the secured claim.

■ The cost of money borrowed by the secured claimant is irrelevant under Section 1325(a)(5)(B)(ii). The cost of money to a colossal financial institution such as Chrysler Credit because of its superior credit standing may be much less than the cost of money to a local lender. It is the current rate of return on negotiated loans made by the secured claimant to borrowers of a class similar to the Chapter 13 debtor which is determinative of the rate to be allowed the holder of an allowed secured claim paid in deferred terms under 1325(a)(5)(B)(ii). A lower rate would appear to be less than the adequate protection required by § 361 and § 362(d) and 363 of the Bankruptcy Code. The confirmation standard of Section 1325(a)(5)(B)(ii) seems to be consistent with and perhaps a derivation of the concept of adequate protection of § 361.

---

5. The Class One applicable annual percentage rates of interest are: twelve months, 17.9%; 24 months, 18.16%; 36 months, 17.92%. Class Two applicable annual percentage rates of interest are: twelve months, 23.19%; 24 months, 23.26%; 36 months, 22.81%.

6. See Ga.Code 96–1004(b).

7. *In re Lum*, 1 B.R. 186, 5 B.C.D. 1039 (B.C.E.D. Tenn.1979).

8. See fn. 4, *supra*.

■ In the previous order of this court dated September 16, 1980,[9] this court concluded that the creditor, under the application of the cram-down provision of Section 1325(a)(5)(B)(ii), was entitled to an economic return based on the realities of what the creditor currently receives under negotiated contracts for similar consumer loans with a similar time period and with similar collateral. This court further concluded that the creditor is entitled °under Section 1325(a)(5)(B)(ii) to the value of $3,100.00 if received in equal monthly payments over a period of three yeas rather than paid now. Under Section 1325(a)(5)(B)(ii) the deferred amount to be paid over the term of the plan must be equal to the value of the claim if paid in cash at the time of the valuation of the collateral. The best method to ascertain the value of money to a creditor paid over a period of time is to determine what that particular creditor routinely receives as negotiated finance charges over the period of time with similar collateral.

■ The evidence establishes that this creditor currently makes only consumer loans secured by liens on vehicles in accordance with the Georgia Motor Vehicle Financing Act. Chrysler Credit makes these consumer loans in Georgia only at the maximum Finance Charge Limitation rates allowed by the Georgia statute. The claimant is not licensed under the Georgia Industrial Loan Act or other laws of Georgia to make other consumer loans. For this model vehicle, Class Three applies, and the annual percentage rate of interest is 25.98% for a 36 month negotiated loan to a consumer who is not a Chapter 13 debtor.

Thus, 25.98% is the annual rate of interest which must apply to this Chapter 13 debtor under Section 1325(a)(5)(B)(ii) if the plan is to be confirmed and the Debtor is to retain ownership and possession of automobile on which Chrysler Credit has a lien.

■ Any intimation drawn from the comments of this court in the opinion dated September 16, 1980 [10] that a subsequent res-olution of the value of the collateral and determination of the payments due as herein found would be appropriate, should the claimant move for a hearing on adequate protection under Section 362(d), is erroneous. The plan when confirmed is binding on the debtor and each creditor. 11 U.S.C. § 1327(a). The findings made here as to compensation under § 1325(a)(5)(B)(ii) are conclusive and binding throughout the plan so long as the Debtor makes the required payments.

---

9. See fn. 1, *supra.*

10. See fn. 1, *supra.*