In the Matter of Bruce Dennis SCOVILL, Kathleen Diane Scovill, Debtors.

**Bankruptcy No. BK81–2359.**

United States Bankruptcy Court, D. Nebraska.

March 25, 1982.

Kenneth E. Shreves, Omaha, Neb., trustee.

Jerome Grossman, Omaha, Neb., for debtors.

Clay Rogers, Omaha, Neb., for Credit Union.

## MEMORANDUM

DAVID L. CRAWFORD, Bankruptcy Judge.

This case came before the court upon the objection to confirmation of the Chapter 13 plan of Bruce and Kathleen Scovill, debtors, by Nebraska Lutheran Credit Union (Credit Union), a secured creditor.

It is undisputed by the parties that the Credit Union holds a security interest in three vehicles presently in the debtors' possession, namely a 1980 Plymouth Fury, a 1976 Free Spirit Camper, and a 1975 Ford Torino. The debtors' plan provides that holders of secured claims retain their respective liens until the amount by which the claim is allowed as secured is paid in full. Accordingly, the plan proposed a total payment to the Credit Union of $3,400 at 12% per annum interest. Upon expert testimony and other evidence adduced at hearing, I have established the fair market value of the vehicles to be $2,500, $100, and $1,700 respectively, or a total secured claim in favor of the Credit Union of $4,300.

The sole issue remaining to be determined is the interest rate contemplated by the present value requirement of section 1325(a)(5)(b)(ii) of the Bankruptcy Code.

That section provides that creditors holding allowed secured claims retain the liens securing their respective claims and that the value such creditors are to receive under the plan, as of the plan's effective date, is not less than the amount of such claims. To arrive at this figure, it is necessary to determine the interest rate required to equal the present value of the deferred future payments. See Collier on *Bankruptcy* 1325.01 (15th ed.) 1325–26.

Certain bankruptcy courts have made use of a state's legal interest rate or the federal interest rate for repayment of delinquent taxes imposed by 26 U.S.C. 6621 to calculate the long-term repayment of present value. *In re Crockett*, 6 B.C.D. 226, 3 B.R. 365 (Bkrtcy.N.D.Ill.1980); *In re Ziegler*, 6 B.C.D. 194, 6 B.R. 3 (Bkrtcy.S.D.Ohio 1980). Others have averaged the legal rate of interest in their respective states and the interest rate in the consumer credit contract into which the parties entered. *In re Klein*, 7 B.C.D. 668, 10 B.R. 657 (Bkrtcy.E.D.N.Y.1981). Still other courts have made exclusive use of the contract rate of interest, citing section 502(b) of the Bankruptcy Code, which disallows unmatured interest on a claim, and that section's legislative history which establishes the presumption that the discount rate is equivalent to the contract rate. *In re Rogers*, 6 B.C.D. 1214, 6 B.R. 472 (Bkrtcy.S.D.Iowa 1980); *In re Smith*, 6 B.C.D. 424, 4 B.R. 12 (E.D.N.Y. 1980).

However, I find that such rules of calculation may not produce an interest rate at all reflective of the economic climate on the effective date of the plan, the operative date according to the express language of the statute. *In re Benford*, 8 B.C.D. 117, 14 B.R. 157 (Bkrtcy.W.D.Ky.1981). I read the requirements of Bankruptcy Code section 1325(a)(5) as anticipating a current market rate of interest for the type of secured loan under consideration.

When the debtor by filing his petition for relief is authorized to make a secured lender an involuntary lender, that debtor must pay a rate of interest equivalent to that rate which he would have to pay in the marketplace. Conversely, the creditor subject to this cram-down provision is entitled to receive the same rate of return as it would from any borrower in a class similar to the debtor. *In re Cooper*, 7 B.C.D. 854, 11 B.R. 391 (Bkrtcy.N.D.Ga. 1981). It is not the function of this court nor the purpose behind the statute to provide a debtor with anything more than a fresh start. If the debtor is to emerge successfully from a completed Chapter 13 plan, he must be able to function normally in the existing economy, not in an artificial-

ly insulated one. As the *Benford* court points out, "The statute reads 'value as of the effective date of the plan'; it does not read value, as of the effective date of the plan but subject to reduction depending on the debtor's ability to pay." *Benford*, 8 B.C.D. at 119, 14 B.R. 157.

Testimony has been received which indicates that the Credit Union, an entity whose loan interest rates are subject to federal regulation, was on the effective date of the plan charging an interest rate of from sixteen to twenty-one percent for used car loans. More particularly, should an individual negotiate a new loan on the vehicles at issue here, the rate charged would be set by that institution at 18%.

Because I find the eighteen percent figure to be one reasonably indicative of the loan marketplace at the time of confirmation, the interest rate for repayment of the $4,300 secured loan is set at 18% per annum.