**In re Robert Bruce MOORE, Debtor.**

**Bankruptcy No. 82 B 04884 Mc.**

United States Bankruptcy Court,
D. Colorado.

April 7, 1983.

Thomas F. Quinn, Denver, Colo., for Foothill Indus. Bank.

Jeffrey Hill, Englewood, Colo., for debtors (Moore).

AMENDED FINDINGS OF FACT AND ORDER DENYING MOTION TO ALTER OR AMEND VALUATION OF THE CLAIM OF FOOTHILLS INDUSTRIAL BANK

JOHN F. McGRATH, Bankruptcy Judge.

The Debtor filed an amended plan valuing the 1979 Model 55C Massey Ferguson tractor-loader secured to Foothill Industrial Bank (Bank). The Bank filed an objection to the confirmation of the plan based upon the valuation of the collateral and the capitalization rate proposed by the Debtor. The capitalization rate as proposed by the Debtor was 12 percent per annum. In a hearing on January 31, 1983, the Court found that the value of the Bank's claim was $15,000.00; and further found that the claim should be capitalized at the rate of 13½ percent. The attorney for the Debtor then consented to the 13½ percent rate. An order of confirmation was entered on February 10, 1983, allowing the Bank's secured claim in the capitalized amount of $18,306.17. On February 16, 1983, the said

Bank filed a Motion To Amend Findings of Fact, Make Additional Findings Of Fact and to Alter Or Amend the Judgment relating to its claim.

Pursuant to 11 U.S.C. § 1322(b)(2), the debtor's plan may modify the rights of holders of secured claims. Further, pursuant to sec. 1325(a)(5)(B)(ii) the Court can confirm a plan with regard to an allowed secured claim if the plan provides that the holder of such claim retain the lien and is allowed the value of the property to be distributed under the plan. This provision is the cram down provision of Chapter 13. *5 Collier on Bankruptcy,* ¶ 1325.01(2)(E)(2)(b)(ii) (15th Ed.1980) states that the court must ascertain the *present value of the property to be distributed.* In other words, the court must capitalize the deferred payments by converting the deferred payments proposed to be distributed into an equivalent capital sum as of the effective date of the plan. Obviously, this would mean that in most cases the Debtor would propose interest payments over and above the face amount of the allowed secured claim and it would be up to the court to determine what capitalization would give the creditor the required present value.

The Plaintiff's testimony at the hearing was to the effect that at the date of the confirmation hearing the New York prime rate was 11 percent and had been 11 percent for some time and the rate for Treasury Bills was 7 to 8 percent. In their argument, the Bank proposed that it be paid the contract rate as provided in the original lending. The Bank's witness testified that the note was signed on September 25, 1979. The contract rate of interest was 20 percent. The Bank's witness further testified that prime at that time was 13½ percent. The testimony was that prime is used as the interest to be charged an excellent credit risk for a loan of not to exceed 90 days. The prime rate that the Bank uses is based on the prime charged by the Croker National Bank in California, which is presently 11 percent. Further, it was testified that the cost of funds to the Bank is now at 11½ percent. The Bank is presently lending for a six month period at prime plus 4

percent and for a three year period the rate presently charged is 18 percent. It should be pointed out that the Debtor's plan will take 34 months to pay out. The Court noted that at the date of the hearing U.S. Treasury Bills for three months carry the rate of 7.98 percent, at 6 months 8.04 percent and for one year 8.11 percent. The discount rate at that time was 8.50 percent. As of the date of this opinion, the interest rates on the U.S. Treasury Bills have fallen somewhat and the New York prime rate is 10.50 percent. The interest rate for delinquent taxes is 16 percent for the year of 1983.

The purpose of capitalization is to compensate the creditors for the cost of money, as the creditor must wait a set period of time to collect. Courts have used all sorts of different criteria in the reported cases dealing with this problem.

If Congress had wanted the courts to use the contract rate, they could have very simply stated at Section 1325(a)(5)(B)(ii) that the court would value the security and pay the contract rate. What Congress did say is

> ... Of course, the secured creditor's lien only secures the value of the collateral and *to the extent property is distributed of a present value equal to the allowed amount of the creditor's secured claim* the creditor's lien will have been satisfied in full... 124 Cong.Rec. H11107 (Sept. 28, 1978); S17423 (Oct. 6, 1978) (Emphasis added.)

If the rates on judgments were to be used, the Federal rate of interest on the date of confirmation would be approximately 8 percent. In Colorado, the rate of interest would be 8 percent except on appeal, where the rate of interest is the discount rate at the beginning of each year, plus 2 points, or approximately 11 percent at this time.

This Court tries to set an appropriate rate by considering all of the rates concerning the use of money and then attempts to approximate the present value of money which would neither provide the creditor a profit nor cause the creditor to suffer a loss. This calculation cannot be done by using a

mere mathematical formula. The Court also bears in mind that at a particular moment rates may be unusually high or unusually low, and that during a three year period of payout the rate will fluctuate somewhat. For example, the Bank's witness testified that the present rate of interest on this contract would be 18 percent rather than 20 percent as was provided for in the contract. Also, the Court notes that on February 1, 1982, U.S. Treasury Bills with one year maturity paid a rate of 12.56 percent and one year later paid 8.11 percent. In sitting on these cases since the effective date of the Code, October 1, 1979, this Court has seen interest rates vary greatly, but it seems to the Court that interest rates are currently on the low side and the pendulum may well swing back to the high side. Therefore, a flexible standard should be used and all of the facts should be taken into consideration in determining what is a fair and reasonable rate of capitalization at a particular time.

The court's search for a capitalization rate may be compared to a court's search to find the discount rate to use to reduce future lump sum to present value. The courts use various approaches to this problem. *Steckler v. U.S.*, 549 F.2d 1372 (10th Cir.1977.) In a matter involving a personal injury award, the trial court adopted a 9.5 percent discount rate based on the defendant's expert's testimony that this was the current yield of triple A-rated corporate bonds, while plaintiff's expert had testified the 4 percent discount rate used on long-term insurance annuities was more appropriate. The trial court was upheld. The appellate court found the trial court had selected an exceptionally high discount rate, but the decision was not clearly erroneous so would not be set aside. The defendant's expert's testimony supported the 9.5 percent and the trial judge could, in his discretion, accept this figure. *Hoskie v. United States,* 666 F.2d 1353 (10th Cir.1981.)

After hearing the testimony and taking judicial notice of other rates of interest, this Court arrived at the figure of a 13½ percent capitalization rate and believes this figure justly compensates the creditor for

the use of money and does not unduly penalize the Debtor. In viewing all the factors we do not believe the court has abused its discretion in setting this rate.

WHEREFORE, the above and foregoing constitutes the amended findings of fact and additional findings of fact.

WHEREFORE, IT IS ORDERED that the Motion to Alter or Amend Previous Judgments by this Court relating to value and interest rate be and the same is hereby denied.