**In re Clarence C. and Katy HARDZOG, Debtors.**

**Bankruptcy No. BK–86–3552–A.**

United States Bankruptcy Court, W.D. Oklahoma.

June 19, 1987.

1. The Honorable Michael J. Melloy, United States Bankruptcy Judge.

B.J. Brockett, of Brockett, Warren, Brady & Homsey, Oklahoma City, Okl., for debtors.

G. Blaine Schwabe III, and J. Eric Ivester, of Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Okl., for the Federal Land Bank of Wichita.

Rick Poland, of Rogers Abbott & Associates, Oklahoma City, Okl., for Jack Cornelius, Chapter 12 Trustee.

### MEMORANDUM DECISION

RICHARD L. BOHANON, Chief Judge.

Debtors have proposed a plan for adjustment of their debts pursuant to Chapter 12 of the Bankruptcy Code. The Federal Land Bank of Wichita, an oversecured creditor, objects to the discount rate used to calculate the present value of its allowed claim.[1] The issue thus concerns determination of the proper discount rate for the claim of an oversecured creditor when it is paid in deferred cash payments.

The debtor proposes to compensate the Federal Land Bank using a formula resulting in a rate of 7.5%. The Bank asserts that the discount rate should be based on its contract interest rate which is 12.5%.

The holder of an allowed secured claim receives the present value of the claim through future distributions of property made under the plan.[2] Interest must be paid to provide full value for its claim because money received in the future is worth less than money received immediately. The interest rate is, for plan purposes, equal to the discount rate.

█ Congress patterned § 1225(a)(5)(B)(ii) after § 1325(a)(5)(B)(ii). This leads us to conclude that it intended Chapter 13 cases to be precedents in similar Chapter 12 situations.

---

1. The allowed amount of the claim is determined by including interest calculated at the contract rate up to the effective date of the plan as required by 11 U.S.C.A. § 506(b) (West Supp.

1987). The claim may also include, where appropriate, the creditor's attorney fees and costs.

2. 11 U.S.C.A. § 1225(a)(5)(B)(ii) (West Supp. 1987).

The authors of one treatise state that under a Chapter 13 plan the contract rate is determinative of the interest rate where calculating the amount of the claim but not where setting the discount rate.[3] The authors advocate use of the creditor's "cost of funds" to determine the appropriate discount rate.[4] Under this theory a creditor is entitled to its cost of funds plus a premium for risk. It was applied in *In re Fisher*, 29 B.R. 542 (B.R.D.Kan.1983), where the court determined that the 52–week U.S. Treasury Bill rate was a sufficient measure of the cost of funds to the creditor.[5]

Courts have applied the cost of funds theory in other cases.[6] In these cases it was determined that the U.S. treasury bill rate plus a risk premium was an adequate measure of the creditors' cost of funds.[7]

There is no consensus as to the method of determining the appropriate discount rate. Several rates have been utilized including: (1) the contract rate;[8] (2) the tax rate;[9] (3) state or federal legal rates;[10] (4) the legal rate plus a premium;[11] (5) the prime rate;[12] (6) various U.S. treasury bill rates plus a premium;[13] (7) an average of several rates;[14] (8) the prevailing market rate;[15] and (9) the rate at which the creditor could invest the funds.[16]

The Court of Appeals for the Tenth Circuit has required a debtor to pay the contract rate of interest to an oversecured creditor pursuant to a Chapter 11 plan.[17] The bankruptcy court had interpreted a clause of the underlying contract to require a certain interest rate. This rate apparently determined the discount rate to be paid to the creditor. The Court of Appeals, without discussing the appropriateness of using the contract rate, affirmed the lower court's interpretation of the contract. The Court did not hold that the contract rate is to determine the discount rate but merely accepted, without discussion, the fact that it was used in this manner. Thus, the court's decision does not mandate application of the contract rate standard.

After considering the various methods of determining an appropriate discount rate we prefer the cost of funds approach. The use of the creditor's cost of funds as the discount rate properly balances the interests of the debtor and creditors. Where the rate paid for funds is less than the contract rate the debtor is afforded some relief and the creditor receives its cost to obtain replacement funds. It can then reinvest the funds, providing it the opportunity to receive profit from another borrower

3. *Collier on Bankruptcy* ¶ 506.05 and ¶ 1325.06 (15th ed. 1979 & Supp.1987).

4. *Collier on Bankruptcy* ¶ 1325.06[4][b][iii][B] (15th ed. 1979 & Supp.1987).

5. The creditor in that case was the Internal Revenue Service. Its costs of funds was the cost to the government to obtain funds. The government obtains funds through debt offerings including treasury bills. Thus, the rate paid on treasury bills indicated the costs of funds. *In re Fisher*, 29 B.R. 542, 550 (Bankr.D.Kan.1983).

6. *Campbell v. Ford Motor Credit Co.* (*In the Matter of Campbell*), 16 B.R. 496 (Bankr.N.D.Ill. 1982); *General Motors Acceptance Corp. v. Willis* (*In the Matter of Willis*), 6 B.R. 555 (Bankr. N.D.Ill.1980).

7. The U.S. treasury bill rate is not always an accurate measure of the creditors' cost of funds. In *In re Moore*, 29 B.R. 27 (Bankr.D.Colo.1983) the cost of funds was 11½% while the U.S. treasury bill rate was about 8%.

8. *In re Cooper*, 11 B.R. 391 (Bankr.N.D.Ga.1981).

9. *In re Ziegler*, 6 B.R. 3 (Bankr.S.D.Ohio 1980) (26 U.S.C. § 6621).

10. *In the Matter of Crockett*, 3 B.R. 365 (Bankr. N.D.Ill.1980).

11. *In re Lum*, 1 B.R. 186 (Bankr.E.D.Tenn.1979).

12. *In re Miller*, 4 B.R. 392 (Bankr.S.D.Cal.1980).

13. *In re Levine*, 10 B.R. 168 (Bankr.D.Mass. 1981) fn. 4.

14. *In re Klein*, 10 B.R. 657 (Bankr.E.D.N.Y. 1981).

15. *Memphis Bank & Trust Company v. Whitman*, 692 F.2d 427 (6th Cir.1982).

16. *In re Jewell*, 25 B.R. 44 (Bankr.D.Kan.1982); *In re Citrowske*, 72 B.R. 613 (B.R.Minn.1987).

17. *Travelers Insurance Company v. Pikes Peak Water Company* (*In re Pikes Peak Water Company*), 779 F.2d 1456 (10th Cir.1985).

while suffering no continuing loss due to the bankruptcy of the debtor.

■ The cost of funds should reflect the actual rate the creditor must pay to obtain the replacement funds. If the debtor seeks to pay the loan over a set period of time the cost should be what the creditor would pay to obtain funds for a similar period.

The creditor is asked to accept some risk of default under any plan and the creditor should also be compensated for this risk.

■ Determinations of the cost of funds and the risk factor require factual findings, varying from case to case. Accordingly, this matter will be noticed for hearing to determine those issues.