In re Clarence C. (L.O.) HARDZOG
and Kathy Lou Hardzog, Debtors.

Clarence C. (L.O.) HARDZOG and
Kathy Lou Hardzog,
Appellees/Plaintiffs,

v.

The FEDERAL LAND BANK OF
WICHITA, Appellant/Defendant.

Nos. CIV–87–1448–A, CIV–87–2073–A.
Bankruptcy No. BK–86–03552–A.

United States District Court,
W.D. Oklahoma.

Jan. 23, 1989.

B.J. Brocket, Anthony L. Jackson, Oklahoma City, Okl., for debtors.

G. Blaine Schwabe, III, Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Okl., for Federal Land Bank of Wichita.

Rick Poland, Rogers Abbott & Associates, Oklahoma City, Okl., for Jack Cornelius, Trustee in No. CIV–87–2073 A.

W. Rogers Abbott, II, Oklahoma City, Okl., trustee in No. CIV–87–1448 A.

## ORDER AFFIRMING BANKRUPTCY COURT

ALLEY, District Judge.

## I.  INTRODUCTION.

Before the Court in case number CIV–87–1448–A is the appeal by the Federal Land Bank of Wichita ("Bank") of the June 19, 1987 Order of the Bankruptcy Court, reported as *In re Hardzog*, 74 B.R. 701 (Bankr.W.D.Okla.1987). The dispositive issues are: (1) whether the modified plan confirmed by the bankruptcy court proposed to pay Bank a value of its secured claim less than the allowed amount required by 11 U.S.C. §§ 506(b) and 1225(a)(5)(B)(ii), and (2) whether the bankruptcy court's application of Chapter 12 violated Bank's fifth amendment rights.

Also before the Court in case number CIV–87–2073–A is the appeal by Bank of the order of the bankruptcy court entered September 11, 1987, *In re Hardzog*, 77 B.R. 840 (Bankr.W.D.Okla.1987), wherein the bankruptcy court factually determined the dollar value of Bank's secured claim. The two appeals are decided together in this Order, as they have previously been determined to be companion cases. W.D.Okla.R. 8(B).

## II.  STANDARD OF REVIEW.

In reviewing a bankruptcy court's decision, the district court functions as an appellate court and is authorized to affirm, reverse or modify the bankruptcy court's ruling or to remand the case for further proceedings. Fed.R.Bankr.P. 8013. The Court is bound to accept the bankruptcy court's findings of fact unless they are clearly erroneous, but may examine its conclusions of law de novo. *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399–400 (10th Cir.1986); *In re Mullet*, 817 F.2d 677, 678–79 (10th Cir.1987). A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). In reviewing the factual findings, an appellate court may not weigh the evidence or reverse a finding because it would have decided the case differently. *Id.* A bankruptcy court's factual determinations will not be disturbed on appeal absent "the most cogent reasons appearing in the record." *Kansas Fed. Credit Union v. Niemeier*, 227 F.2d 287, 291 (10th Cir. 1955). "The appellate court is not called upon to determine whether the trial court reached the correct conclusion of law, but rather whether it reached a permissible conclusion in light of the evidence." *Dowell v. United States*, 553 F.2d 1233, 1235 (10th Cir.1977) (citing *Kelly v. Layton*, 309 F.2d 611 (8th Cir.1962)).

## III.  FINDINGS AND ANALYSIS.

A.  *The Cost–of–Funds Approach to Ascertaining the Value of the Rate of the Allowed Secured Claim.*

A bankruptcy court can only confirm a plan to reorganize a bankrupt's debts if "each allowed secured claim provided for by the plan ... [has a] value, as of the

effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim and is not less than the allowed amount of such claim...." 11 U.S.C. § 1225(a)(5)(B)(ii) (1986). Consequently, the Bank, an oversecured creditor, argues that its Section 506(b) rate on its claim should be its contracted, variable-rate interest rate of 12.5%, on grounds that that rate inheres in the value of the allowed amount of its secured claim as of the effective date of the modified plan. *See* 11 U.S.C. §§ 506(b) & 1225(a)(5)(B)(ii), and that it was deprived of post-confirmation profit.

Under the bankruptcy court's decision, the Bank was allowed its contractual interest up to the effective date of the plan. 11 U.S.C. §§ 506(b) & 1225(a)(5)(B)(ii); *In re Hardzog*, 74 B.R. at 702 & n. 1. The Bankruptcy Court's formula for determining the rate after that confirmation date was the cost to the Bank to replace the putative loan funds coerced under the plan plus a default risk factor. *In re Hardzog*, 74 B.R. at 702–04. The Court finds that the bankruptcy court correctly applied the law; its analysis is well-reasoned; and the actual value of the claim, which includes the amount of post-confirmation interest, was not erroneously computed.

Plaintiff appellant makes two arguments why the bankruptcy court erred, one statutory, one Constitutional.

### 1. The Statutory Argument.

■ The statutory prong is that the bankruptcy court's use of the cost-of-funds approach violated 11 U.S.C. § 1225(a)(5) by affording appellant less than the value of the allowed amount of its secured claim. This prong is thoroughly and polemically briefed by appellant, but the brief boils down to the naked complaint "We've been unfairly treated" without close statutory analysis.

A claim may not be allowed for unmatured interest. 11 U.S.C. § 502(b)(2). With respect to an allowed fully secured claim, the value of the property distributed to the creditor may not be less than the allowed amount of the claim. 11 U.S.C.

§ 1225(a)(5)(B)(ii). Where the value of collateral exceeds the amount of an allowed secured claim, "there shall be allowed to the holder of *such claim,* interest *on such claim* ...". 11 U.S.C. § 506(b) (emphasis supplied).

The grammar within and the relationships among these *in pari materia* sections lead this Court to conclude that the Section 1225 reference to "allowed amount" is governed by the Section 502 limitations, and that Section 506(b) interest is not an increment of the claim within its allowed amount, but rather a discrete add-on to the defined "allowed amount." In that the rule of Section 506(b) commences with a reference to the "allowed secured claim" and proceeds to afford "interest *on such claim,"* by the logic of grammar "such claim" must be the claim without that interest. Thus, the minimum prescribed in Section 1225 is not, as appellant urges, inclusive of Section 506 interest.

Finding no violation of Section 1225, the Court further finds that using a cost-of-funds approach in awarding Section 506 interest is not error. No interest rate or formula is prescribed in Section 506, and courts have used different approaches. The contract rate is the most common, but it is not universally applied. In analogous situations, *see, e.g., Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982) (prevailing market rate); *In re Citrowske,* 72 B.R. 613 (Bankr.Minn.1987) (creditor's regular loan market rate); *In re Cooper,* 11 B.R. 391 (Bankr.N.D.Ga.1981) (routine rate in creditor's business); *In re Ziegler,* 6 B.R. 3 (Bankr.S.D.Ohio 1980) (26 U.S.C. § 6621 rate); *In re Crockett,* 3 B.R. 365 (Bankr.N.D.Ill.1980) (state legal rate); and *In re Lum,* 1 B.R. 186 (Bankr.E.D. Tenn.1979) (legal rate plus a premium). Although the formulation of a proper rate, as opposed to a calculation under the formulation, partakes of a conclusion of law reviewable de novo, the task of this Court is still to decide whether the Bankruptcy Court erred. The issue at bar is one on which reasonable judges may differ, and the differences represent but opinions about fairness. The opinion of this Court

is that a cost-of-funds approach is fair to the debtor, as it furthers the rehabilitative purposes of Chapter 12; is fair to the estate, because the Section 506 interest does not inordinately consume it; and is fair to the creditor, because it is reasonably cushioned against loss. Realistically, what the creditor lost below was the current value of future profit on the money it had to use to fund its putative loan to debtor. This is not an untoward incident of a Chapter 12 bankruptcy.

## 2. The Constitutional Argument.

■ The Constitutional prong of the argument by Bank is that it was deprived of private property without due process of law and without just compensation.

### (a). *Due Process.*

The Bank argues that the modified plan deprives it of its right to retain its lien on the collateral, and prevents the collateral from being applied in repayment of the full obligation it is owed. This is necessarily an invocation of substantive due process, because the procedures available to a creditor in the bankruptcy court and in its appeals comport with any definition of procedural fairness.

Bank, in effect, retains its mortgage by receiving a deed in lieu of foreclosure to protect against default. Reasonableness is the Constitutional test for due process, and the Court finds that Chapter 12 bankruptcy takings have a legitimate social purpose even though there is a private benefit, and have a rational basis. *See, e.g., Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 242–43 & n. 6, 104 S.Ct. 2321, 2330 & n. 6, 81 L.Ed.2d 186 (1984) ("When the legislature's purpose is legitimate and its means are not irrational, our cases make clear that empirical debates over the wisdom of takings—no less than debates over the wisdom of other kinds of socioeconomic legislation—are not to be carried out in the federal courts."); *Wright v. Union Cent. Life Ins. Co.,* 304 U.S. 502, 515–16, 58 S.Ct. 1025, 1032–33, 82 L.Ed. 1490, *reh'g denied,* 305 U.S. 668, 59 S.Ct. 56, 83 L.Ed. 433, 434 (1938) (Fifth amendment due process is not violated by extension of time of redemption after a judicial sale because mortgage contract was made subject to Constitutional power in Congress to legislate on subject of bankruptcies); and *Kuehner v. Irving Trust Co.,* 299 U.S. 445, 453–55, 57 S.Ct. 298, 302–03, 81 L.Ed. 340 (1937); *c.f. Orrego v. Department of Housing and Urban Development,* 701 F.Supp. 1384 (N.D.Ill. 1988).

### (b). *Just Compensation.*

There is no question but that Bank has been justly compensated for its loan principal, and accrued interest. As to future interest, Bank asserts an uncompensated taking, citing *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 597–98, 55 S.Ct. 854, 867, 79 L.Ed. 1593 (1935) (holding Frazier–Lemke Act unconstitutional in violation of the fifth amendment's Taking Clause because, despite a mortgage default, the statute allowed the debtor to purchase the subject property for less than fair market value). The Court finds that the Bank's reliance on this authority is misplaced. The Court understands Bank's position that it is an oversecured creditor; but for the bankruptcy Bank could receive from its debtor the bargained-for profit on use of money. The bankruptcy court's power is subject to the prohibition against taking private property without just compensation. *United States v. Security Indus. Bank,* 459 U.S. 70, 74–75, 103 S.Ct. 407, 410, 74 L.Ed.2d 235 (1982). However, within the social legislative context of bankruptcy, this Court finds that Bank possessed a bundle of property rights consisting of the loan principal, accrued interest, and the expected contract interest. The Court finds that "the destruction of one "strand" of the bundle is not a taking, because the aggregate must be viewed in its entirety." *Andrus v. Allard,* 444 U.S. 51, 66, 100 S.Ct. 318, 327, 62 L.Ed.2d 210 (1979). The plan effectively reimburses the Bank for borrowing new capital after confirmation of the plan and adds a default risk premium. The Bank can recoup the lost profit on its capital by other investments. Therefore, Bank has been justly compensated.

B. *Application of the Cost of Funds Approach.*

In preparation for its September 11, 1987 Order, the bankruptcy court had the benefit of a financial expert who testified regarding cost of replacing Bank's funds for the coerced loan to debtor pursuant to this Chapter 12 reorganization. *In re Hardzog,* 74 B.R. 701. The bankruptcy court found that that expert witness was credible, and no other evidence concerning actual cost was offered.

Having determined that the bankruptcy court may, but is not compelled to, use the contract rate of interest, and that the replacement of funds formula is not clearly erroneous, This Court is left with the issue whether the bankruptcy court properly derived the value of the claim in its mechanical application of the formula.

1. *Cost of Delivery Factor.*

■ Bank argues that the bankruptcy court erred in refusing to factor the cost of delivery into the replacement cost formula. The bankruptcy court reasoned that cost of delivery represents expenses incurred after the funds have been obtained, in the effort to market those funds to a borrower. This cost includes operating and other overhead expenses. *In re Hardzog,* 77 B.R. at 841.

The crux of Bank's argument is that the modified plan will last three years, but Bank's coerced loan will last fifteen years. Therefore, Bank will incur some administration expense now, and will incur more in the future when the trustee no longer collects payments. The Court notes that administrative fees are but a small factor of the cost of delivery. Furthermore, the bankruptcy court determined that the trustee will collect payments for the first three years. Under the plan, a deed in lieu of foreclosure has been provided to Bank in case of default. The bankruptcy court also determined that under the plan the amortization period is shorter than under the original note, and there is an adequate equity cushion. *In re Hardzog,* 77 B.R. at 842–43. The bankruptcy court also determined that there would be some expense to Bank, but it would be reduced by the plan. *Id.* at

843. Therefore, the Court finds that the bankruptcy court's denial of cost of delivery is not clearly erroneous. *In re Branding Iron Motel, Inc.,* 798 F.2d at 400.

2. *Determination of the Risk Factor.*

■ Finally, Bank argues that the Bankruptcy Court incorrectly determined the risk factor of the loan. The bankruptcy court relied on three elements of risk identified by a sister court in Chapter 13 proceedings, *In re Fisher,* 29 B.R. 542, 544 (Bankr.D.Kan.1983), and derived a risk of default percentage of .7% based on the following factors: (1) the equity cushion, (2) percentage of default experienced by the Bank during the last four years, (3) the supervised budget for the next three years, (4) the deed in lieu of foreclosure, (5) the determination that the plan was feasible, (6) the debtor's willingness and ability to comply with the plan, (7) the reduction of the unsecured debt, (8) automatic termination of the three year plan in case of default, (9) elimination of risk of delay, and (10) administration of the plan by the trustee. *In re Hardzog,* 77 B.R. at 242–43; *In re Kloberdanz,* 83 B.R. 767, 771 (Bankr.D. Colo.1988). The Court finds the determination of the risk factor to not be clearly erroneous. *In re Branding Iron Motel, Inc.,* 798 F.2d at 400. The Court gives substantial deference to the bankruptcy court in determining risk factors. *In re Camino Real Landscape Maintenance Contractors, Inc.,* 818 F.2d 1503, 1508 (9th Cir.1987); quoting *In re Fi–Hi Pizza,* 40 B.R. 258, 271 (Bankr.D.Mass.1984). The bankruptcy court's consideration of these factors was well-reasoned, and the Bank's arguments are not meritorious.

## IV.  CONCLUSION.

Accordingly, the bankruptcy court's Orders of June 19, and September 11, 1987 are AFFIRMED.

IT IS SO ORDERED.